# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| GEODYNAMICS, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 2:15-CV-01546-RSP |
| § | |
| DYNAENERGETICS US, INC., § | |
| ANDERSON PERFORATING § | |
| SERVICES, LLC, and TONG § | |
| PETROTECH INC., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

In this patent and trademark case, the Court will now consider Defendants' Motion for Attorneys' Fees and Expenses [Dkt. # 187]. Defendants seek fees and expenses from Plaintiff GeoDynamics under 35 U.S.C. § 285 and 15 U.S.C. § 1117.[1] After full briefing and argument on the motion, the Court will **DENY** the motion as to the patent claims but **GRANT** the motion as to the trademark claims.

## I.     BACKGROUND

Plaintiff GeoDynamics sells its CONNEX-branded charges for use in oil-field perforation, and contends use of those charges is a commercial embodiment of certain claims

---

[1] Defendants do not specifically invoke 15 U.S.C. § 1117, but the parties have briefed and argued the issue.

of U.S. Patent 9,080,431. Am. Compl. [Dkt. # 21] at 1–2. Defendant DynaEnergetics also sells charges for oil-field perforation, which are branded as DPEX. *Id.* at 2. Defendant Anderson Perforating provides oil-field perforation services using shaped charges, such as the CONNEX- and DPEX-branded charges at issue. Defendant Tong Petrotech imports the perforating carriers—the conveyances for delivering the charges to the proper depth within a well—used by Anderson. Tong has an ownership interest in third-party API Holdings, LLC, which owns Anderson.

In September 2015, GeoDynamics sued Defendants for patent and trademark infringement. Compl. [Dkt. # 1]; *see also* Am. Compl. [Dkt. # 21]. GeoDynamics alleged direct and indirect infringement by Defendants of Claims 1–3, 5–6, and 8 of the '431 Patent (the Asserted Claims) resulting from use of DynaEnergetics's DPEX-branded shaped charges. Am. Compl. [Dkt. # 21] at 4–10. GeoDynamics also alleged infringement of its federally registered word mark REACTIVE (U.S. Regis. No. 3,496,381) by DynaEnergetics in connection with selling its DPEX charges. *Id.* at 11–13.

The '431 Patent relates to a method for explosively perforating a well casing and the surrounding formation in balanced or near-balanced pressure conditions—that is, when the pressure within the wellbore is the same or nearly the same as the pressure of the surrounding formation. '431 Patent at 1:16–19; *id.* at 2:54–66 (describing the characteristics of underbalanced and overbalanced conditions). Rather than perforating a casing and the surrounding location with a conventional shaped charge, the '431 Patent teaches use of reactive shaped charges that create a first *conventional* explosive event to perforate the

tunnel and a second *reactive* explosive event caused by an exothermic intermetallic reaction. That reaction eliminates a zone of reduced permeability in the tunnel, called the "crushed zone," caused by the compaction of debris resulting from the first explosive event. *See id.* at 1:66–2:2. That, in turn, obviates the need to create an underbalanced condition prior to perforation to clear the debris, and also increases production capability relative to the prior-art shaped charges. Thus, the key claim limitations at issue are (1) whether users of the accused DPEX charges perforate the wellbore "without changing the pressure condition of the wellbore to a more underbalanced condition," *id.* at 11:18–19, and (2) whether "the second [reactive] explosive event eliminat[es] a substantial portion of [the] crushed zone and clear[s] debris from within [the] perforation tunnel," *id.* at 11:27–29.

After two trials, Defendants prevailed on all issues. In March, a jury found Defendants did not directly or indirectly infringe the '431 Patent, the Asserted Claims were invalid as anticipated and obvious, and GeoDynamics's 2007 and earlier sales of its CONNEX-branded charges triggered the on-sale bar. Jury Verdict [Dkt. # 158]. In April, after a one-day bench trial, the Court found REACTIVE generic and ordered its federal trademark registration canceled. Judgment [Dkt. # 180].

Defendants now move for their fees. First, Defendants contend GeoDynamics's patent infringement validity positions were baseless. Defs.' Motion [Dkt. # 187] at 4–16. Second, Defendants contend GeoDynamics improperly included Tong in the lawsuit. *Id.* at 16–18. Finally, Defendants contend GeoDynamics's trademark infringement claims were baseless. *Id.* at 18–20.

## II. APPLICABLE LAW

A "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An exceptional case, though rare,

> is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756, (2014) (footnote omitted); *see id.* at 1757 (explaining that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees"). In weighing the evidence, the district court may consider, among other factors, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case)[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (internal quotation marks and citation omitted); *see also id.* at 1758 (explaining that a § 285 attorney fee award is appropriate "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (internal quotation marks and citation omitted)). An exceptional case determination must find support in a "preponderance of the evidence." *Id.* at 1758. *See also Baker v. DeShong*, 821 F.3d 620, 624 (5th Cir. 2016) (merging *Octane Fitness*'s definition of "exceptional" into 15 U.S.C. § 1117(a) and holding "an exceptional case is one where (1) in considering both governing law and the facts

of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner'").

## III. DISCUSSION

### A. GeoDynamics's Patent Infringement Position

Defendants contend GeoDynamics had a complete lack of proof and took inconsistent positions that justify an "exceptional" finding. Specifically, Defendants contend GeoDynamics's fact witnesses repeatedly testified one could not know the balance condition between the well and formation without asking the well operator, and thus could not prove Defendants perforated wellbores "without changing the pressure condition . . . to a more underbalanced condition." Defendants complain GeoDynamics relied solely on its expert, Larry Behrmann, who contradicted its fact witnesses by relying on circumstantial evidence. Defendants contend Plaintiff knew of this flaw from the start yet proceeded anyway, which demonstrates bad faith. *See generally* Defs.' Motion [Dkt. # 187] at 6–8.

The Court is not persuaded. For one, DynaEnergetics acknowledged it achieved its best results in overbalanced conditions, and thus suggested use of the charges without changing the pressure condition to a more underbalanced condition. Trial Tr. [Dkt. # 169] at 160:8–162:13. Moreover, Behrmann's opinion was based on circumstantial evidence—specifically (1) since 2010 the industry generally uses a standard procedure for all plug-and-perf operations that requires overbalancing, Trial Tr. [Dkt. # 171] at 13:18–20, and (2) 99% of operations since 2014 in shale wells are plug and perf, *id.* at 7:6–14. Although the

evidence of infringement was weak, it was not so baseless as to justify an exceptionality finding.

Defendants also criticize GeoDynamics for failing to prove use of the accused charges "eliminate[s] a substantial portion of [the] crushed zone." Defs.' Motion [Dkt. # 187] at 8–9. Defendants note GeoDynamics's corporate representative admitted he did not know how much of the crushed zone was removed by use the accused charges. *Id.* (citing Trial Tr. [Dkt. # 169] at 97:21–23). This combined with GeoDynamics's failure to conduct actual testing using the accused charges, say Defendants, demonstrates "exceptionality." *See generally* Defs.' Motion [Dkt. # 187] at 8–9.

Here, too, the Court disagrees. DynaEnergetics's marketing materials (1) claim the accused charges "break up the crushed zone and transport it out of the perforating channel," *see, e.g.*, PTX 3 at DYNA_004979; PTX 5 at DYNA_005458, and (2) compare the accused charges to GeoDynamics's CONNEX charge. *See, e.g.*, PTX 16 (noting, in an email from a DynaEnergetics's sales director, that "Dyna has a drop in replacement" for the "Geo Connex shaped charge" that is "evenly matched technically"); PTX 179 (noting "[p]erformance against the Connex is very comparable"). GeoDynamics's reliance on Defendants' marketing materials did not convince the jury, but the losing position does not make this case exceptional.

### B.  GeoDynamics's Validity Position

Defendants' argument as to the baselessness of GeoDynamics's validity position is two-pronged. First, Defendants complain Behrmann's reasoning as to infringement was

inconsistent with his reasoning as to invalidity, specifically with respect to application of the on-sale bar: Whereas Behrmann based his infringement opinion on standard industry practice, he did not apply that same reasoning to whether GeoDynamics's 2007 use of the CONNEX charges triggered the on-sale bar. Second, Defendants argue that, given the strength of their asserted invaliding prior art, GeoDynamics weakly relied on nothing but Behrmann's inconsistent opinions and industry skepticism. *See generally* Defs.' Motion [Dkt. # 187] at 10–16.

The Court disagrees. Concerning infringement, Behrmann testified as to the general procedure for plug-and-perf operations as of 2010 based on his knowledge of the industry, but the relevant date of inquiry for the on-sale bar was 2007. While the jury might properly question Behrmann's credibility on this point, the position does not justify an "exceptional" finding. Nor does Defendants' prior-art argument support such a finding in light of the evidence GeoDynamics presented at trial.

### C.   The Inclusion of Tong Petrotech

Defendants next argue GeoDynamics had no factual basis to conclude Tong had actual notice of the '431 Patent, a requirement for a finding of indirect infringement. Defendants further argue GeoDynamics's true motivation for including Tong was to cast Defendants as part of a Chinese-driven conspiracy. To that end, GeoDynamics spent more trial time playing testimony of a single Tong witness than on testimony of its own inventors. Moreover, say Defendants, GeoDynamics failed to abide by the Court's directive not to reference China in the text of video depositions played during trial. *See generally* Defs.'

Motion [Dkt. # 187] at 16–18.

GeoDynamics responds by citing to testimony that Hang Li, a Tong vice president, controlled profitability of Anderson, and the length of her video deposition was caused by Defendants' insistence that translation time be included in the deposition cuts. GeoDynamics notes Defendants' counsel did not immediately object to the playing of the deposition as edited, but waited until the Court's next break. GeoDynamics's Resp. [Dkt. # 192] at 14–20.

The Court concludes this does not amount to a basis for "exceptionality." The in-clusion of Tong Petrotech in the case was questionable, as was the inordinate length of the deposition clip GeoDynamics played at trial. But there is not a clear basis for concluding that GeoDynamics did this for an improper purpose.

### D. GeoDynamics's Trademark Claims

Defendants contend GeoDynamics wrongly prosecuted its trademark claim despite three fatal flaws: (1) its REACTIVE mark was generic for the relevant goods and services; (2) any use by DynaEnergetics of "reactive" was fair use; and (3) DynaEnergetics was not using the term. GeoDynamics responds that its REACTIVE mark was incontestable, which alone negates any "exceptional" finding. It also contends DynaEnergetics refused to agree in writing not to use the mark. Finally, GeoDynamics argues it minimized the expense of litigating the trademark claim by not seeking monetary damages and agreeing to a bench trial.

The Court finds GeoDynamics's trademark case "exceptional" based on the weakness of its litigating position. Foremost, GeoDynamics and its witnesses admitted the phrases "reactive liner charge" and "reactive charge" are generic for the goods in question. Trial Tr. [Dkt. # 174] at 143:15–23; *id.* at 144:21–23; Trial Tr. [Dkt. # 184] at 142:24–25 ("the generic category for that is reactive liner charges"); *id.* at 160:14–16 (admitting DynaEnergetics "can use [the mark] generically as a reactive liner"). Indeed, the Court found overwhelming evidence that the mark is generic. *Id.* at 160:25–161:11.

Second, GeoDynamics gave no meaningful analysis of infringement. Instead, rather than walking through the Fifth Circuit's digits of confusion, [2] GeoDynamics simply concluded "infringement" by relying on an "admission" of infringement in an internal DynaEnergetics document from August 2015. Trial Tr. [Dkt. # 184] at 4:13–22 (citing PTX 167 at DYNA_004251[3]). At best, however, that document admitted DynaEnergetics simply used "reactive," which is not sufficient to establish infringement. *See, e.g.*, *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546 (5th Cir. 1998) (recognizing that "where . . . use of

---

[2] In the Fifth Circuit, courts consider

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion [,]' . . . [and] (8) the degree of care exercised by potential purchasers.

*Streamline Production Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017).

[3] "As Dynaenergetics has used ["reactive"] previously, a re-launch of the product may be beneficial. The proposed change in terminology and name is 'energetic liner shaped charges." PTX 167 at DYNA_004251.

a mark occurs without any implication of affiliation, sponsorship, or endorsement—i.e., a likelihood of confusion—the use 'lies outside the strictures of trademark law.'" (quoting *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 2005)); *Naked Cowboy v. CBS*, 844 F. Supp. 2d 510, 515 (S.D.N.Y. 2012) ( "Not every unauthorized use of a protected mark is actionable.").

Third, GeoDynamics presented no evidence DynaEnergtics had used the mark since this lawsuit started in September 2015. Its only documentary evidence on that point was the August 2015 document referring to earlier use. PTX 167 at DYNA_004251 ("As DynaEnergetics has used this term previously . . . ."). During argument, GeoDynamics asserted "[REACTIVE] was on their website during trial, or at least when we had filed it" and "there will be dates on documents that we produced that it was still on the website describing DPEX," Motion H'rg (Sept. 27, 2017) at 2:25:40–2:26:10, but the Court has reviewed the trial exhibits and found no such websites. Moreover, all of GeoDynamics's trial exhibits purportedly evidencing "use" pre-date the filing of this lawsuit. Without such evidence of continued use, it was unreasonable for GeoDynamics to pursue its trademark claim solely for an injunction with such an objectively weak infringement position. *See, e.g.*, *Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 618–19 (S.D. Tex. 2014) (denying a request for a permanent injunction "based on lack of evidence of continuing or the likelihood of future infringement").

Finally, GeoDynamics's position on damages suggests it had none. GeoDynamics argued

> [i]t got to the point where it was clear that from a damages standpoint, the trademark actual damages would greatly overlap with the lost profits on the—on the sales of the DPEX charge itself, or the patent case, and there was—there was just no point. The actual damages would have been a direct overlap, and it would have been very complicated for the jury to try and separate out, separate out that overlap, and it would have taken additional expert time.

Trial Tr. [Dkt. # 184] at 5:4–11 (emphasis added).

This explanation is unconvincing for a number of reasons. For one, GeoDynamics agreed to a separate bench trial on the trademark issues, so one would expect a good-faith litigant to independently support all elements of its trademark claim, especially given there was no guarantee it would prevail on its patent-infringement claim. Damages evidence would have also bolstered its infringement position with evidence of actual confusion. And there are significant differences between available patent damages and available trademark damages (e.g., the entire market value rule) such that they are not, as GeoDynamics claims, a "direct overlap." The Court finds it more likely there were simply no damages to present.

Considering all the circumstances, DynaEnergetics has carried its burden of showing GeoDynamics's trademark infringement claim was "exceptional." Accordingly, the Court will grant Defendants' motion to that extent.

## IV. CONCLUSION & ORDER

The Court **GRANTS** the motion **IN PART**. As to GeoDynamics's patent claims, the Court agrees with Defendants that this was a weak case, but concludes it was not so weak that it warrants a finding of exceptionality under § 285 and **DENIES** the motion. As to GeoDynamics's trademark claim, the Court **GRANTS** the motion because, under a

preponderance-of-the-evidence standard, this case stands out from others as to the substantive weakness of GeoDynamics's litigating position.

The Court **ORDERS** the parties to promptly confer and attempt to agree on an appropriate amount of attorneys' fees and expenses incurred by Defendants relating to defending against Plaintiff's trademark claims. To the extent the parties are unable to agree on an appropriate amount, Defendants should file their motion to fix fees and non-taxable costs, with supporting affidavits and documentation, within 30 days of the date of this Order. GeoDynamics must file any opposition within 14 days of Defendants' motion, and any reply must be filed within 7 days thereafter.

SIGNED this 21st day of December, 2017.

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE